UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| DONNA DUTTON, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 3:23-cv-00039-GFVT |
| | ) | |
| v. | ) | **OPINION** |
| | ) | **&** |
| HON. JIMMY SHAFFER, *et al.* | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff Donna Dutton's Motion for Preliminary Injunction. [R. 4.] While running for election, Judge Dutton gave a statement to a local newspaper. [R. 1 at 6.] The Kentucky Judicial Conduct Commission informed Judge Dutton that her statement may have violated the Code of Judicial Conduct. [R. 1-5.] Judge Dutton now asks the Court to prevent the Commission from bringing an enforcement action under the First Amendment. [R. 1.] But Judge Dutton won her election. Thus, she does not face a threat of imminent, irreparable harm. Her request for a preliminary injunction is **DENIED**.

**I**

Judge Dutton was a candidate for the 53rd Judicial Circuit in the 2022 election cycle. [R. 1 at 4.] Days before the election, a local Kentucky newspaper published an article focused on a previous suspension that Judge Dutton received. *Id.* at 6. The article included a response that Judge Dutton provided to the newspaper, where she attempted to explain the suspension. *Id.* She then won her election. *Id.*

Months later, the Defendants sent Judge Dutton a letter informing her that a complaint had been filed against her with the Commission. [R. 1-5.] The complaint alleged that Judge

Dutton's response to the newspaper was false, and the letter invited her to respond to the complaint. *Id.* She did. [R. 1-6.] Attorneys for Judge Dutton and the Commission then began a discussion about the potential for settlement. [R. 10-5.] The Commission sent Judge Dutton a proposed agreed order that would settle the matter and welcomed proposed changes from Judge Dutton. *Id.* at 1. If agreed upon, the proposed agreed order would publicly reprimand Judge Dutton and state that she violated several portions of the Code of Judicial Conduct by responding to the newspaper article. [R. 10-4.]

Rather than proposing changes, Judge Dutton brought this action against the Defendants. [R. 1.] She now moves for an order enjoining the Defendants from initiating formal enforcement proceedings against her for her comments. [R. 4.] She argues that such formal proceedings would violate the First Amendment and cause her irreparable harm. *Id.* On the other hand, the Defendants argue that this Court must abstain from exercising jurisdiction over Judge Dutton's claims and allow the state process to continue. [R. 10.]

II

A preliminary injunction is an extraordinary remedy that should be granted only if the movant carries his or her burden of proving that the circumstances "clearly demand it." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." *Robertson v. U.S. Bank, N.A.*, 831 F.3d 757, 761 (6th Cir. 2016) (internal quotations omitted).

To obtain a preliminary injunction, the movant must show that (1) they have a strong likelihood of success on the merits, (2) they are likely to suffer irreparable harm if the injunction is not issued, (3) the balance of equities favors an injunction, and (4) an injunction furthers the

public interest. *See Overstreet,* 305 F.3d at 573. Yet when a party asserts that the Court should apply the *Younger* abstention doctrine, a court "must first address the *Younger* issue prior to engaging in any analysis on the merits of the case." *Kalniz v. Ohio State Dental Bd.*, 699 F. Supp. 2d 966, 970 (S.D. Ohio 2010) (citing *Tenet v. Doe*, 544 U.S. 1, 6, n. 4 (2005) and *Steel Co. v. Citizens for Better Env't.*, 523 U.S. 83, 100, n.3 (1998)). If *Younger* applies, a court "may not retain jurisdiction over the case." *See O'Neill v. Coughlan*, 490 F. App'x 733, 737 (6th Cir. 2012) (citing *Juidice v. Vail*, 430 U.S. 327, 348 (1977) (Stewart, J., dissenting)). The Defendants argue that *Younger* abstention applies here.

## A

Abstention doctrines "promote harmony between the state and federal courts" and reflect the belief that "the state courts should be left to decide matters of unique importance to them." *Summit Cty. Crisis Pregnancy Ctr., Inc. v. Fisher*, 830 F. Supp. 1029, 1032 (N.D. Ohio 1993). One abstention doctrine, *Younger*, "cautions federal courts against exercising jurisdiction in cases where they are asked to enjoin pending state proceedings." *Fowler v. Benson*, 924 F.3d 247, 255 (6th Cir. 2019) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989)).

*Younger* applies in only "three exceptional categories" of cases: (1) parallel, pending state criminal proceedings, (2) state civil proceedings that are akin to criminal prosecutions, and (3) state civil proceedings that implicate a state's interest in enforcing court orders and judgments. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). In all cases, there must be a state proceeding that was pending at the time that the action was filed in federal court. *See Kelm v. Hyatt*, 44 F.3d 415, 422 (6th Cir. 1995); *Fed. Express Corp. v. Tenn. Pub. Serv. Com.*, 925 F.2d 962, 969 (6th Cir. 1991).

With nearly identical facts, the Sixth Circuit has held that no pending state proceeding existed. *Winter v. Wolnitzek*, 834 F.3d 681, 688 (6th Cir. 2016). In *Winter*, an individual running for a judicial election made various statements while campaigning that concerned the Judicial Conduct Commission. *Id.* at 686. The Commission sent her a letter informing her that a complaint had been filed against her and requesting that she respond to the allegations in writing. *Id.* at 687. The letter listed particular statements and alleged that they violated the Code of Judicial Conduct. *Winter v. Wolnitzek*, 186 F. Supp. 3d 673, 679 (E.D. Ky. 2016). The Commission issued the letter after deciding that there was "probable cause for action." *Winter*, 834 F.3d at 686. The plaintiff contacted the Commission and asked for additional details, but the Commission refused. *Winter*, 186 F. Supp. 3d at 679. The Sixth Circuit held that "a finding of probable cause does not necessarily mean a formal proceeding exists," and in the "absence of an ongoing enforcement action, *Younger* has no role to play." *Winter*, 834 F.3d at 688.

Like in *Winter*, Judge Dutton made a statement that the Commission found concerning. [R. 1 at 6.] The Commission sent Judge Dutton a letter informing her that "a complaint has been filed against [her]" and "requested [she] file a written response to the allegations." [R. 1-5.] The letter listed the particular statements Judge Dutton made and alleged that they violated the Code of Judicial Conduct. *Id.* The Commission issued the letter after determining that the complaint showed "a basis for investigation of a matter within the jurisdiction of the Commission." Ky. R. Sup. Ct. 4.170(1). These are the same procedures as those in *Winter*. Thus, *Winter* dictates that no ongoing enforcement action existed at this point. *Winter*, 834 F.3d at 688.

Only, here, Judge Dutton responded to the allegations and the Commission proposed an agreed order to settle the matter. [R. 1 at 7-8; R. 1-7.] The proposed agreed order would have Judge Dutton stipulate to the violations and receive a public reprimand. [R. 1-7.] But Judge

4

Dutton's response and the Commission's proposed agreed order are not sufficient to create an ongoing state proceeding. Neither a response nor a settlement offer moves the Commission's investigation out of the preliminary stage. *See* Ky. R. Sup. Ct. 4.170. Indeed, the Commission never initiated formal proceedings. *See* Ky. R. Sup. Ct. 4.180. Moreover, the Commission admits that "all parties understood" that the draft agreed order "was just that—a draft." [R. 10 at 3.] It represented a starting point for negotiations before the Commission considered formal charges. *See id.* Therefore, like in *Winter*, no ongoing state proceedings exist. And in the "absence of an ongoing enforcement action, *Younger* has no role to play." *Winter*, 834 F.3d at 688.

The Commission contends that if Judge Dutton faces a credible threat of enforcement sufficient to confer standing, then the Commission's "disciplinary process" is necessarily ongoing and *Younger* applies. [R. 10 at 14-15.] The Commission raised this argument in *Winter* as well. 834 F.3d at 688 ("If the plaintiffs have standing to raise these challenges and if they are ripe for resolution, the Commission maintains, that must be because the Commission has initiated formal proceedings against them."). The Sixth Circuit rejected this argument. *Id.* ("But a finding of probable cause does not necessarily mean a formal proceeding exists."). Accordingly, *Younger* does not prevent this Court from exercising jurisdiction over Judge Dutton's challenge. *See Fowler*, 924 F.3d at 255.

**B**

Judge Dutton requests an order preliminarily enjoining the Defendants from instituting formal proceedings while this action proceeds. [R. 4 at 20.] While the components of a preliminary injunction are generally "factors to be balanced," it is "indispensable" that the movant show they are likely to suffer an irreparable harm without an injunction. *Six Clinics*

5

*Holding Corp., II*, 119 F.3d at 400; *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019).

To constitute an irreparable harm, the movant must show a harm that is actual and immediate, not "speculative or theoretical." *D.T.*, 942 F.3d at 327 (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). The harm must also be such that there is no adequate remedy at law. *See United States v. Miami Univ.*, 294 F.3d 797, 816 (6th Cir. 2002). The movant must also show that she will suffer the injury before a final judgment. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."). Judge Dutton claims that she will suffer four types of irreparable harm. [R. 4 at 16-20.] Yet because she fails to show that she would suffer any irreparable harm, the inquiry ends there.

First, Judge Dutton alleges that bringing an enforcement action for her prior speech constitutes an irreparable harm because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at 18 (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)). Surely, Judge Dutton would suffer an irreparable injury if the Commission were threatening to impair her ability to speak now. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). But "the only speech threatened by the Commission's proceedings has already occurred." *Fischer v. Thomas*, No. 22-5938, 2023 U.S. App. LEXIS 21409, at *7 (6th Cir. Aug. 16, 2023). Judge Dutton does not allege that she intends to engage in similar speech anytime soon. Therefore, "if a court finds that the past speech was protected, then the appropriate remedy is damages, not an injunction." *Id.* at *8.

Second, Judge Dutton contends that formal proceedings will chill her and other candidates' speech in future elections. [R. 4 at 18.] But because "there's no ongoing election"

6

and she has not "indicated that there will be before the case reaches final judgment . . . the risk of chill isn't 'immediate.'" *Fischer*, No. 22-5938, 2023 U.S. App. LEXIS 21409, at *7 (citing *D.T.*, 942 F.3d at 327). Judge Dutton may renew her request for an injunction if an election looms. *See id.*

Third, Judge Dutton argues that being subjected to formal proceedings will necessarily hurt her reputation and goodwill. [R. 4 at 18-19.] Though reputational harm can be irreparable, she fails to support this claim. A movant claiming reputational harm must provide proof in support. *See, e.g.*, *Tri-County Wholesale Distribs. v. Wine Grp.*, Inc., 565 F. App'x 477, 486 (6th Cir. 2012) (affirming a finding of no harm where "the motions and the affidavits left the district court without any facts upon which it could plausibly find anything but a speculative threat of irreparable harm"); *Reliant Capital Sols., LLC v. Ram Payment, LLC*, No. 2:22-cv-3047, 2022 U.S. Dist. LEXIS 210242, at *32-33 (S.D. Ohio Nov. 18, 2022) (finding no irreparable harm where the plaintiff provided no "market studies of name recognition, any figures of lost sales, or any evidence of actual confusion").

Judge Dutton provides only one sentence claiming that formal proceedings will harm her reputation and goodwill. [R. 4 at 18-19.] Finding an irreparable harm without supporting evidence here would mean that administrative enforcement actions always cause irreparable harm. They do not. *See, e.g.*, *Dobson Indus. v. Iron Workers Local Union No. 25*, 237 F. App'x 39, 49 (6th Cir. 2007); *Fischer*, 2023 U.S. App. LEXIS 21409, at *9. Because Judge Dutton supports her claim with no facts showing that this harm will actually occur, the threat of harm is speculative. *Tri-County Wholesale Distribs.*, 565 F. App'x at 486.

Finally, Judge Dutton argues that, if the Commission institutes formal proceedings, there will now be a pending state proceeding and *Younger* will prevent her from seeking a remedy in

7

federal court. [R. 4 at 17-18.] She contends that this inability to seek federal relief would constitute an irreparable harm. *Id.* However, Judge Dutton fails to show that *Younger* would apply. And even if it did, utilizing an abstention doctrine—designed to promote harmony between the state and federal courts—does not constitute a harm.

*Younger* abstention is required only when state court proceedings are initiated "before any proceedings of substance on the merits have taken place in the federal court." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). In other words, *Younger* applies only when state proceedings began when "the federal litigation was in an embryonic stage and no contested matter had been decided." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929 (1975).

Proceedings are not yet of substance on the merits where the "sole issue" addressed by the court is whether to abstain. *See Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1271 (11th Cir. 2019) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 437 (1982)). Likewise, federal proceedings are not yet on the merits where the court only denied a request for a temporary restraining order. *See Hicks*, 422 U.S. at 337, 349. But an action where a court granted a preliminary injunction has "certainly" proceeded "well beyond" the embryonic stage. *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984).

The Sixth Circuit has not reviewed the issue in depth. *See Louisville Area Inter-Faith Comm. for United Farm Workers v. Nottingham Liquors, Ltd.*, 542 F.2d 652, 654 (6th Cir. 1976) (no proceedings on the merits where a complaint has been filed). However, the Ninth Circuit has found that an "extended evidentiary hearing on the question of a preliminary injunction constituted a substantive proceeding on the merits," even though the court did not ultimately grant the motion. *Adultworld Bookstore v. City of Fresno*, 758 F.2d 1348, 1350-51 (9th Cir. 1985). Some courts have gone further, holding that proceedings on the merits have begun where

a motion for preliminary injunction was briefed but still pending before the court. *See, e.g.*, *Cremeans v. Taczak*, No. 2:19-CV-2703, 2019 U.S. Dist. LEXIS 183158, at *24 (S.D. Ohio Oct. 23, 2019) (finding proceedings on the merits where the court held a preliminary injunction hearing for which "the parties and the Court had already spent significant time and resources preparing"); *Merck Sharp & Dohme Corp. v. Conway*, 909 F. Supp. 2d 781, 789 (E.D. Ky. 2012) (finding proceedings on the merits where the action was pending for over seven months, the parties briefed two "important" motions, and the court held a scheduling conference).

This action has been pending for nearly four months. [*See* R. 1.] The Defendants answered the complaint and agreed not to initiate formal proceedings until the Court resolves the request for a preliminary injunction. [R. 8; R. 9; R. 13.] The parties fully briefed the motion for preliminary injunction, and the Court conducted a hearing during which the parties argued at length Judge Dutton's First Amendment claims. [R. 14.] Although this order does not discuss the merits of these claims, the parties and the Court nonetheless spent significant time analyzing them. [R. 4; R. 10; R. 12.] Therefore, this action has progressed past the embryonic stage with contested matters decided. *See Doran*, 422 U.S. at 929.

Moreover, because no state proceedings exist, this action continues to progress. The Court expects the parties to soon meet and confer under Federal Rule of Civil Procedure 26(f), create a discovery plan, and begin discovery. Judge Dutton provides no evidence that the "Defendants are prepared to immediately file formal charges against her." [R. 1 at 9.] Rather, when sending Judge Dutton the proposed agreed order, the Defendants' counsel represented that they "are not faced with any impending deadlines" and invited Judge Dutton to negotiate changes to the proposed order. [R. 10-5.] Thus, Judge Dutton fails to show that state proceedings would soon begin and bar this Court's jurisdiction even if these are not yet of

9

substance on the merits.

Regardless, Judge Dutton fails to show that the threat of *Younger* abstention constitutes a harm. In our system, federal and state courts share the stage. Neither is a mere understudy to the other. In fact, the state and federal governments are separate sovereigns, and state power derives from a source independent of the federal government. *Puerto Rico v. Sánchez Valle*, 579 U.S. 59, 72 n.5 (2016). Federal courts designed *Younger* "to promote equity and comity and allow state officials to proceed with cases uninterrupted by the federal courts." *Doe v. Univ. of Ky.*, 860 F.3d 365, 372 (6th Cir. 2017).

Judge Dutton argues that simply directing her "to a state process" is irreparable harm. [R. 4 at 17.] Yet she does not specify how the state process would prejudice her rights. Indeed, she does not argue that the state process disables her from bringing federal claims. *See id.* This would consider the Court's own abstention doctrine inherently harmful. The Court will not hold that relegating an individual to a state process to promote equity and comity between separate sovereigns constitutes irreparable harm. *See Univ. of Ky.*, 860 F.3d at 372.

In fact, *Younger* has its own exception in cases of irreparable harm. If a plaintiff can show that the pending state proceeding would cause irreparable injury, then *Younger* does not bar the court from hearing the case. *See Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 564 (6th Cir. 1982). But if a state proceeding itself is an irreparable harm, the exception would always apply and *Younger* would turn into a nullity. Therefore, Judge Dutton fails to show that the threat of *Younger* abstention constitutes an irreparable harm. And because Judge Dutton does not show that she is likely to suffer any other irreparable harm, she is not entitled to a preliminary injunction. *See Six Clinics Holding Corp., II*, 119 F.3d at 400.

10

### III

Accordingly, and the Court being sufficiently advised, Judge Dutton's Motion for Preliminary Injunction [**R. 4**] is hereby **DENIED**.

This the 15th day of September, 2023.

Gregory F. Van Tatenhove
United States District Judge