UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| DONNA DUTTON, | ) ) ) |
| Plaintiffs, | ) Case No. 3:23-cv-00039-GFVT-EBA |
| V. | ) ) ) **MEMORANDUM OPINION** |
| HON. JIMMY SHAFFER, *et al.*, | ) **&** |
| | ) **ORDER** |
| Defendants. | ) ) ) |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Plaintiff's Motion for a Preliminary Injunction. [R. 17.] After the Court denied the Plaintiff's request for a Preliminary Injunction, the Plaintiff appealed to the Sixth Circuit. [R. 18.] On remand, the Plaintiff asks the Court to grant the Preliminary Injunction using the guidance from the Sixth Circuit. [R. 48.] This Order reevaluates the prior Order and Opinion in light of the Sixth Circuit's ruling. Accordingly, the Plaintiff's Motion for a Preliminary Injunction [R. 17] is **GRANTED IN PART AND DENIED IN PART**.

**I**

Judge Donna Dutton is a sitting Kentucky District Court judge for the 53rd Judicial Circuit since 2006.[1] In 2020, Judge Dutton was disciplined by the Judicial Conduct Commission as a result of her handling *Commonwealth v. Carter*, specifically a motion for recusal. [R. 1 at 5.] During the motion hearing, Judge Dutton made remarks about the defense counsel stealing money from her husband and attempted to keep a copy of the video of the court proceedings

---

[1] These facts were taken from the Court's prior Opinion and Order at [R. 17] and the Complaint at [R. 1].

from being released. *Id.* at 6. Judge Dutton ultimately recused from the case later that same day but faced disciplinary action from the Commission. *Id.* Judge Dutton agreed that she violated Rules 1.1, 1.2, 1.3, 2.2, 2.4, 2.8, 2.9, and 2.11 of the Code, and was punished with a 14-day suspension. *Id.*

In 2022, Judge Dutton ran for reelection. [R. 1 at 4.] Days before the election, a local Kentucky newspaper published an article focused on a previous suspension that Judge Dutton received. *Id.* at 6. The article included the below response that Judge Dutton provided to the newspaper, where she attempted to explain the suspension:

> That issue involved the theft of a large sum of money by an attorney who also happens to practice law with my opponent. I let my personal feelings about the theft interfere with my courtroom conduct and for that I apologize. No litigants were affected by my actions, and the only person hurt was me.

*Id.* She then won her election. *Id.*

Months later, the Defendants sent Judge Dutton a letter informing her that a complaint had been filed against her with the Commission. [R. 1-5.] The complaint alleged that Judge Dutton's response to the newspaper was false, and the letter invited her to respond to the complaint. *Id.* She did. [R. 1-6.] Attorneys for Judge Dutton and the Commission then began a discussion about the potential for settlement. [R. 10-5.] The Commission sent Judge Dutton a proposed agreed order that would settle the matter and welcomed proposed changes from Judge Dutton. *Id.* at 1. If agreed upon, the proposed agreed order would publicly reprimand Judge Dutton and state that she violated several portions of the Code of Judicial Conduct by responding to the newspaper article. [R. 10-4.]

Rather than proposing changes, Judge Dutton brought this action against the Defendants. [R. 1.] She now moves for an order enjoining the Defendants from initiating formal enforcement proceedings against her for her comments. [R. 4.] In September 2023, this Court denied her

2

request for a preliminary injunction, finding that Dutton has not sustained an irreparable injury. [R. 17.]  Dutton appealed to the Sixth Circuit.  [R. 18.]

On August 15, 2024, the Sixth Circuit vacated and remanded this Court's prior denial for preliminary injunction "for a fresh appraisal of Dutton's request."  [R. 48-1 at 1.]  This Court previously determined that Dutton failed to show an irreparable harm, and, therefore, denied her request for a preliminary injunction.  [R. 17.]  The Sixth Circuit, however, vacated and remanded this issue for further proceedings.  [R. 48-1 at 10.]  The Sixth Circuit said that this Court "should have assessed Dutton's likelihood of success on the merits before reaching the irreparable injury question" because Dutton is alleging a continuing violation.  [R. 48-1 at 9.]  Ultimately, the Sixth Circuit ordered for this Court to "conduct the preliminary injunction analysis in its entirety," keeping in mind that where a constitutional right is at issue, the likelihood of success on the merits is the determinative factor.  [R. 48-1 at 9-10.]

**II**

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)) (cleaned up) ("[A] preliminary injunction involv[es] the exercise of a very far-reaching power . . .")).  Because of the unique procedural posture brought on by a Motion for Preliminary Injunction, the Court notes that the nature and purpose of a preliminary injunction informs the analysis. As the Supreme Court has stated:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of

3

>procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary injunction hearing.

*University of Texas v. Camenisch*, U.S. 390, 395 (1981). Therefore, the findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits. *Id.* It is through this lens the Court makes the following findings of fact and conclusions of law.

To issue a preliminary injunction, the Court must consider whether: (1) the movant shows a strong likelihood of success on the merits; (2) the movant will suffer irreparable harm if the injunction is not issued; (3) the issuance of the injunction would cause substantial harm to others; and (4) the public interest would be served by issuing the injunction. *Overstreet*, 305 F.3d at 573.

### A

The first part of a preliminary injunction looks at the likelihood of success on the merits. The Plaintiff disputes the constitutionality of Rule 1.2, Rule 2.4(B), and Rule 4.1(A)(11). [R. 4 at 11.] Rule 1.2 provides: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Rule 2.4(B) provides: "A judge shall not permit family, social, political, financial, or other relationships to influence the judge's judicial conduct or judgment." Rule 4.1(A)(11) provides: "Except as permitted by law, or by Rules 4.2, 4.3, or 4.4, a judge or judicial candidate shall not knowingly or with reckless disregard for the truth, make any false statements of material fact." The Plaintiff argues that Rules 1.2, 2.4(B), and 4.1(A)(11) are all both facially and as-applied unconstitutional. [R. 4 at 11.]

### 1

Where a plaintiff makes a facial challenge under the First Amendment to a statute's constitutionality, the "facial challenge" is an "overbreadth challenge." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc). To succeed on a facial attack, the plaintiff must establish that a "'substantial number of instances exist in which the law cannot be applied constitutionally.'" *Glenn v. Holder*, 690 F.3d 417, 422 (6th Cir. 2012) (quoting *Richland Bookmart, Inc. v. Knox Cnty.*, 555 F.3d 512, 532 (6th Cir.2009)).

The Plaintiff alleges that the Defendants have construed Rules 1.2, 2.4(B), and 4.1(11) so overbroadly as to be facially invalid. [R. 4 at 9.] However, Courts typically "do not apply the 'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 471 n.6 (2008). The burden of showing a "substantial number of instances" rests squarely with the Plaintiff. *Connection Distrib. Co.*, 557 F.3d at 336; *see also N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988) ("To succeed in its [facial overbreadth] challenge, [the plaintiff] must demonstrate from the text of [the statute] and from actual fact that a substantial number of instances exist in which the [l]aw cannot be applied constitutionally."). Ultimately, "the record is utterly barren about whether some, many, indeed any" individuals, other than Judge Dutton, are adversely affected by these rules. *Id.* at 338.

**2**

Having determined that the Plaintiff fails to allege a proper facial challenge on any of the rules, we turn to the as-applied challenge. As-applied challenges have a seemingly lower threshold to meet. *See Winter*, 834 F.3d 681, 687 ("raising a narrow as-applied challenge is easier, not harder, than raising a facial challenge"). The Court finds that Dutton has provided enough facts to allege a plausible as-applied First Amendment challenge to Rule 4.1(A)(11) but

5

fails as to Rules 1.4 and 2.4(B).

a

With respect to Rule 1.4 and Rule 2.4(B), Dutton does not discuss in sufficient detail, either in her Complaint or her preliminary injunction briefings, how her First Amendment rights are burdened by these rules. In fact, in response to the Defendants' contention that the Plaintiff fails to explain how Rules 1.2 and 2.4(A) form an as-applied challenge, the Plaintiff asserts that "it does not matter what rules Defendants cite to in their efforts to turn arson into whale hunting." [R. 12 at 8.] In a seeming attempt to shift the burden to the Defendants, the Plaintiff fails to address completely the rules that she is arguing are unconstitutional. The Court reminds the Plaintiff that the burden rests with her to justify the requested relief. *See Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002) ("A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it.").

Further, the Defendants have passed strict scrutiny under both rules.[2] The first Rule in question is Rule 1.2, which directs that a "Judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Under strict scrutiny, the first question is whether the Defendants have a compelling interest. The Commission argues they have an interest in "promoting an unbiased and impartial judiciary and in maintaining the integrity of the judiciary." [R. 10 at 8.] The Supreme Court has held that such an interest is a compelling one. *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 447-48 (2015). Having determined there is a compelling interest, the Court must now determine whether Rule 1.2 is narrowly tailored to

---

[2] When a law restricts speech on the basis of content, as these rules do, the law is unconstitutional unless it passes strict scrutiny. *See Republican Party of Minn. v. White*, 536 U.S. 765, 774 (2002).

6

achieve said interest. Judicial candidates and officers do not have an unfettered right to say whatever they want. Otherwise, the Code of Conduct for the United States Judges, which requires judges to "uphold the integrity and independence of the judiciary" and "avoid impropriety," would be unconstitutional, which the Sixth Circuit has quipped "would come as a surprise." *See Winter*, 834 F.3d 681, 690; *see also* Canon 1 and Cannon 2.

Being a member of the judiciary is much like being a doctor. The public places great trust in doctors, and upon entry into the coveted profession, doctors are bound by a code of ethics, which provides the confines in which they operate. Likewise, the judiciary is uniquely positioned within the community to undertake the role of decisionmaker. More than any other branch of the government, the judiciary is entrusted with remaining fair and impartial.

As the adage goes, with great power comes great responsibility. A part of that responsibility is being bound by a set of ethical codes, which are not meant to restrict more than necessary; rather, their purpose is to ensure the longevity and vitality of the judiciary. When deciding to become a member of the judiciary, one forfeits some autonomy in exchange to fulfill their role as an impartial decisionmaker. Without such constraints, there would inevitably be a breakdown in the very fiber of the judiciary as the trust and confidence of the people would be lost. Thus, the Court finds that Rule 1.2 is narrowly tailored to achieve the Defendant's interest in "promoting an unbiased and impartial judiciary."

The second rule is Rule 2.4(B), which provides "[a] judge shall not permit family, social, political, financial, or other relationships to influence the judge's judicial conduct or judgment." Similar to the above analysis, the Court finds that this rule suffices to meet strict scrutiny. The Commission has a compelling interest in maintaining a fair tribunal. [R. 10 at 8.] With respect to narrow tailoring, Rule 2.4(B) tracks very closely with Cannon 2B of the Code of Conduct for

7

the United States Judges, which states that "[a] judge should not allow family, social, political, financial, or other relationships to influence judicial conduct or judgment." So, again, it "would come as a surprise," if this Rule was so overbroad as to be unconstitutional.

**b**

With respect to Rule 4.1(A)(11), Dutton argues that the Rule is unconstitutional as applied to her because it prohibits her from telling her side of the story the way that she wants to without offending the Commission. Further, Dutton alleges that she intends to respond to media inquiries regarding the 2020 reprimand in the same way that the Commission finds objectionable under the Code, meaning the threat of enforcement is ongoing. [R. 31 at 11.] Case law dictates that any impermissible burden on the First Amendment, however small, is unconstitutional. *See Connection Distributing Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998). There undoubtedly is a burden on Dutton's First Amendment right, which begs the question of whether Rule 4.1(A)(11) can pass strict scrutiny when applied to the facts. The statement at the center of this case was given in response to questions about Dutton's prior disciplinary history. In her response, Judge Dutton said:

> That issue involved the theft of a large sum of money by an attorney who also happens to practice law with my opponent. . . . I let my personal feelings about the theft interfere with my courtroom conduct and for that I apologize. No litigants were affected by my action, and the only person hurt was me.

[R. 10-3 at 15.]

Under the current construction of the rule, there is no way to know whether the Commission would construe a given statement as "false" until it is too late. This is a slippery slope. It could be the case that Judge Dutton's statement is patently false, but it could also be the case that the Commission does not like the statement and labels it as a false statement. The latter situation poses a problem to the Court because it has the tendency to chill speech that should not

8

be chilled.

The Commission is characterizing Dutton's statement as patently false, while Dutton is characterizing her statement as "ambiguously truthful." [R. 34 at 7.] Under Rule 4.1(A)(11), the former is prohibited, while the latter is allowed. With how the Commission is presently interpreting Dutton's remarks, she stands in violation of Rule 4.1(A)(11) and risks disciplinary action, despite Dutton firmly believing her statement to be factually true. As a result, her ability to speak is burdened. At bottom, the Court can conceive of a world in which Dutton's statement is readily capable of a true interpretation, or, at the very least, that the statement was not made "knowingly, or with reckless disregard for truth."

Although it is presently unclear to what degree Dutton's First Amendment right is burdened, enjoining the application of Rule 4.1(A)(11) as to Dutton would prevent a possible free speech infringement, while also allowing the parties to compile a fuller factual record. Hence, even though the Defendants likely have a compelling interest in safeguarding the public's trust in the honesty of the judiciary, it appears the practical effect of Rule 4.1(A)(11) has the potential to eclipse said interest, thereby failing to give Judge Dutton the requisite "breathing space" to exercise her First Amendment right. *See generally Brown v. Hartlage*, 456 U.S. 45, 61 (U.S. 1982).

C

The second part of a preliminary injunction analysis looks to whether the movant will suffer irreparable harm if the injunction is not issued. *Overstreet*, 305 F.3d at 573. "[T]o the extent that [the moving party] can establish a likelihood of success on the merits of its First Amendment claim, it also has established the possibility of irreparable harm as a result of the deprivation of the claimed free speech rights." *Connection Dist. Co. v. Reno*, 154 F.3d 281, 288

(6th Cir.1998) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Because the Court found that Rule 4.1(A)(11) "threaten[s] or impair[s]" Judge Dutton's constitutional rights, "irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (citing *ACLU of Ky. v. McCreary County*, 354 F.3d 438, 445 (6th Cir. 2003)).  Judge Dutton has proved she would suffer an irreparable injury if injunctive relief is not granted as it relates to Rule 4.1(A)(11).  However, with respect to Rule 1.4 and Rule 2.4(B), because Judge Dutton has failed to prove she is likely to succeed on the merits, it follows that she will not suffer an irreparable injury if injunctive relief is not granted.

**D**

Because both parties combine their arguments relating to harm to others and the public interest, the Court will address both jointly.  Defendants argue "granting the injunction would be contrary to the public interest by hamstringing the JCC's effectuation of its constitutional obligations to investigate and remediate judicial misconduct."  [R. 10 at 13.]  Further, Defendants argue that "[g]ranting the injunction would also harm the JCC, which is entrusted with the responsibility to promote, uphold, and defend the integrity of the judicial branch." *Id.* Plaintiffs charge that Defendants will not be harmed by the issuance of a preliminary injunction, arguing that "there is no public interest in enforcing a law that curtails debate and discussion regarding issues of political support." [R. 17-1 at 22-23 (quoting *Suster v. Marshall*, 149 F.3d 523, 533 (6th Cir. 1998)).]

The public is clearly the "others" the Court considers in this factor and the public has an interest in judicial integrity.  While the public unquestionably has an interest in preserving judicial integrity, the Plaintiff also has an interest in being able to tell her side of the story the way that she wants to.  Because preserving our freedom of speech is a central pillar in our

10

democratic society, the Court finds that the alleged harm to the Plaintiffs in chilling her speech to avoid disciplinary action outweighs the public's interest in this instance. The Court finds the harm to others and the public interest both weigh in favor of the Plaintiff.

### III

In light of the above analysis, the Court finds that Rule 4.1(A)(11), as it applies to Judge Dutton, potentially runs afoul of the First Amendment. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Plaintiff's Motion for Preliminary Injunction **[R. 4]** is **GRANTED IN PART AND DENIED IN PART**;

2. The Plaintiff's request for a preliminary injunction for their facial challenge of Rules 1.4, 2.4(B), 4.1(A)(11) is **DENIED**;

3. The Plaintiff's request for preliminary injunction for her as-applied challenge of Rules 1.4 and 2.4(B) is **DENIED**;

4. The Plaintiff's request for preliminary injunction for her as-applied challenge of Rule 4.1(A)(11) is **GRANTED**; and

5. The Judicial Conduct Commission is **ENJOINED** from enforcing Rule 4.1(A)(11) as it applies to Plaintiff Dutton.

This the 17th day January 2025.



Gregory F. Van Tatenhove
United States District Judge