UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| DONNA DUTTON, | ) |
| Plaintiffs, | ) Case No. 3:23-cv-00039-GFVT-EBA |
| V. | ) |
| | ) **OPINION** |
| HON. JIMMY SHAFFER, *et al.*, | ) **&** |
| | ) **ORDER** |
| Defendants. | ) |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Having elected judicial officers breeds a unique set of problems. Judicial officers and judicial candidates are bound to a certain code of ethics, aimed at ensuring the integrity of the judiciary. However, because they are elected, they are also incorporated into the folds of the political process, which encourages candidates to espouse their positions on a variety of matters. These two processes, seemingly at odds with one another, have come to head in this case. Judge Dutton, during a reelection campaign, made a statement to a local newspaper about her prior disciplinary history that the Judicial Conduct Commission took issue with. Both parties have filed Motions for Summary Judgment, and Judge Dutton is seeking to permanently enjoin the Commission from enforcing Rule 1.2, Rule 2.4(B), and Rule 4.1(A)(11). For the reasons that follow, the Plaintiff's Motion for a Summary Judgment and Permanent Injunction [R. 34] is **GRANTED IN PART AND DENIED IN PART** and the Defendant's Motion for Summary Judgment [R. 39] is **GRANTED IN PART AND DENIED IN PART**.

**I**

Judge Donna Dutton is a sitting Kentucky District Court judge for the 53rd Judicial Circuit since 2006.[1] In 2020, Judge Dutton was disciplined by the Judicial Conduct Commission as a result of her handling of *Commonwealth v. Carter*, specifically a motion for recusal. [R. 31 at 4.] During the motion hearing, Judge Dutton made remarks about the defense counsel stealing money from her husband and attempted to keep a copy of the video of the court proceedings from being released. *Id.* at 6. Judge Dutton ultimately recused from the case later that same day but faced disciplinary action from the Commission. *Id.* Judge Dutton agreed that she violated Rules 1.1, 1.2, 1.3, 2.2, 2.4, 2.8, 2.9, and 2.11 of the Code, and was punished with a 14-day suspension. *Id.*

In 2022, Judge Dutton ran for reelection. [R. 31 at 3.] Days before the election, a local Kentucky newspaper published an article focused on a previous suspension that Judge Dutton received. *Id.* at 6. The article included the below response that Judge Dutton provided to the newspaper, where she attempted to explain the suspension:

> That issue involved the theft of a large sum of money by an attorney who also happens to practice law with my opponent. I let my personal feelings about the theft interfere with my courtroom conduct and for that I apologize. No litigants were affected by my actions, and the only person hurt was me.

*Id.* She then won her election. *Id.*

Months later, the Defendants sent Judge Dutton a letter informing her that a complaint had been filed against her with the Commission. [R. 1-5.] The complaint alleged that Judge Dutton's response to the newspaper was false, and the letter invited her to respond to the complaint. *Id.* She did. [R. 1-6.] Attorneys for Judge Dutton and the Commission then began a discussion about the potential for settlement. [R. 10-5.] The Commission sent Judge Dutton a

---

[1] These facts were taken from the Court's prior Memorandum Opinion and Order at [R. 51].

2

proposed agreed order that would settle the matter and welcomed proposed changes from Judge Dutton. *Id.* at 1. If agreed upon, the proposed agreed order would publicly reprimand Judge Dutton and state that she violated several portions of the Code of Judicial Conduct by responding to the newspaper article. [R. 10-4.]

Rather than proposing changes, Judge Dutton brought this action against the Defendants. [R. 1; R. 31.] She now moves for an order enjoining the Defendants from initiating formal enforcement proceedings against her for her comments. [R. 4.] In September 2023, this Court denied her request for a preliminary injunction, finding that Dutton has not sustained an irreparable injury. [R. 17.] Dutton appealed to the Sixth Circuit. [R. 18.]

On August 15, 2024, the Sixth Circuit vacated and remanded this Court's prior denial for preliminary injunction "for a fresh appraisal of Dutton's request." [R. 48-1 at 1.] The Sixth Circuit said that this Court "should have assessed Dutton's likelihood of success on the merits before reaching the irreparable injury question" because Dutton is alleging a continuing violation. [R. 48-1 at 9.] Ultimately, the Sixth Circuit ordered for this Court to "conduct the preliminary injunction analysis in its entirety," keeping in mind that where a constitutional right is at issue, the likelihood of success on the merits is the determinative factor. [R. 48-1 at 9-10.] On January 17, 2025, the Court entered an Order granting in part and denying in part the Plaintiff's request for a Preliminary Injunction. [R. 51.] The Court granted the Plaintiff's injunction request and enjoined the Commission from enforcing Rule 4.1(A)(11) against Plaintiff Dutton. *Id.* The remainder of the Plaintiff's request was denied. *Id.* Now, there are two cross-motions for Summary Judgment [R. 34; R. 39], as well as a request for a Permanent Injunction [R. 34], all of which are now ripe for review.

3

## II

Under Rule 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.[2] *See* Fed. R. Civ. P. 56(c). A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). "[T]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). "Instead, 'the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.'" *J.B-K.-1 v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 462 F. Supp. 3d 724, 731 (E.D. Ky. 2020), *aff'd sub nom. J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721 (6th Cir. 2022) (quoting *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255).

---

[2] The Court's analysis adheres very closely to the analysis in the prior Memorandum Opinion and Order granting in part and denying in part the Plaintiff's request for a preliminary injunction. [R. 51.]

4

The standards upon which we evaluate motions for summary judgment do not change when, as here, "both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991).

> The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

*Id.* (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir.1987)).

### A

The Plaintiff disputes the constitutionality of Rule 1.2, Rule 2.4(B), and Rule 4.1(A)(11). [R. 4 at 11.]  Rule 1.2 provides: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety."  Rule 2.4(B) provides: "A judge shall not permit family, social, political, financial, or other relationships to influence the judge's judicial conduct or judgment."  Rule 4.1(A)(11) provides: "Except as permitted by law, or by Rules 4.2, 4.3, or 4.4, a judge or judicial candidate shall not knowingly or with reckless disregard for the truth, make any false statements of material fact."  The Plaintiff argues that Rules 1.2, 2.4(B), and 4.1(A)(11) are all both facially and as-applied unconstitutional. [R. 31 at 11-14.]

### 1

Where a plaintiff makes a facial challenge under the First Amendment to a statute's constitutionality, the "facial challenge" is an "overbreadth challenge." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc).  To succeed on a facial attack, the plaintiff must establish that a "'substantial number of instances exist in which the law cannot be applied constitutionally.'" *Glenn v. Holder*, 690 F.3d 417, 422 (6th Cir. 2012) (quoting *Richland*

5

*Bookmart, Inc. v. Knox Cnty.*, 555 F.3d 512, 532 (6th Cir. 2009)).

The Plaintiff alleges that the Defendants have construed Rules 1.2, 2.4(B), and 4.1(A)(11) so overbroadly as to be facially invalid. [R. 34 at 10.] However, Courts typically "do not apply the 'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law." *Wash. State Grange v. Washington State Republican Party*, 552 U.S. 442, 471 n.6 (2008). The burden of showing a "substantial number of instances" rests squarely with the Plaintiff. *Connection Distrib. Co.*, 557 F.3d at 336; *see also N.Y. State Club Ass'n v. City of N.Y.*, 487 U.S. 1, 14 (1988) ("To succeed in its [facial overbreadth] challenge, [the plaintiff] must demonstrate from the text of [the statute] and from actual fact that a substantial number of instances exist in which the [l]aw cannot be applied constitutionally."). Ultimately, "the record is utterly barren about whether some, many, indeed any" individuals, other than Judge Dutton, are adversely affected by these rules. *Id.* at 338.

**2**

Having determined that the Plaintiff fails to allege a proper facial challenge on any of the rules, we turn to the as-applied challenge. As-applied challenges have a seemingly lower threshold to meet. *See Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016) ("raising a narrow as-applied challenge is easier, not harder, than raising a facial challenge"). The Court finds that Dutton has provided enough facts to allege a plausible as-applied First Amendment challenge to Rule 4.1(A)(11) but fails as to Rules 1.4 and 2.4(B).

**a**

With respect to Rule 1.4 and Rule 2.4(B), Dutton does not discuss in sufficient detail, either in her Complaint or her preliminary injunction briefings, how her First Amendment rights are burdened by these rules. At the Motion for Summary Judgment phase, the Court draws all

reasonable inferences against the party whose motion is under consideration. In a seeming attempt to shift the burden to the Defendants, the Plaintiff fails to address completely the rules that she is arguing are unconstitutional. The Court reminds the Plaintiff that the burden rests with her to justify that summary judgment is proper. *See Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010) ("The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact").

Further, the Defendants have passed strict scrutiny under both rules.[3] The first Rule in question is Rule 1.2, which directs that a "Judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Under strict scrutiny, the first question is whether the Defendants have a compelling interest. The Commission argues they have an interest in "promoting an unbiased and impartial judiciary and in maintaining the integrity of the judiciary." [R. 39 at 10.] The Supreme Court has held that such an interest is a compelling one. *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 447-48 (2015). Having determined there is a compelling interest, the Court must now determine whether Rule 1.2 is narrowly tailored to achieve said interest. Judicial candidates and officers do not have an unfettered right to say whatever they want. Otherwise, the Code of Conduct for the United States Judges, which requires judges to "uphold the integrity and independence of the judiciary" and "avoid impropriety," would be unconstitutional, which the Sixth Circuit has quipped "would come as a surprise." *See Winter*, 834 F.3d 681, 690; *see also* Canon 1 and Cannon 2.

Being a member of the judiciary is much like being a doctor. The public places great trust in doctors, and upon entry into the coveted profession, doctors are bound by a code of

---

[3] When a law restricts speech on the basis of content, as these rules do, the law is unconstitutional unless it passes strict scrutiny. *See Republican Party of Minn. v. White*, 536 U.S. 765, 774 (2002).

7

ethics, which provides the confines in which they operate. Likewise, the judiciary is uniquely positioned within the community to undertake the role of decisionmaker. More than any other branch of the government, the judiciary is entrusted with remaining fair and impartial.

As the adage goes, with great power comes great responsibility. A part of that responsibility is being bound by a set of ethical codes, which are not meant to restrict more than necessary; rather, their purpose is to ensure the longevity and vitality of the judiciary. When deciding to become a member of the judiciary, one forfeits some autonomy in exchange to fulfill their role as an impartial decisionmaker. Without such constraints, the trust and confidence so necessary to the integrity of the judicial function, could be jeopardized. Thus, the Court finds that Rule 1.2 is narrowly tailored to achieve the Defendant's interest in "promoting an unbiased and impartial judiciary."

The second rule is Rule 2.4(B), which provides "[a] judge shall not permit family, social, political, financial, or other relationships to influence the judge's judicial conduct or judgment." Similar to the above analysis, the Court finds that this rule suffices to meet strict scrutiny. The Commission has a compelling interest in maintaining a fair tribunal. With respect to narrow tailoring, Rule 2.4(B) tracks very closely with Cannon 2B of the Code of Conduct for the United States Judges, which states that "[a] judge should not allow family, social, political, financial, or other relationships to influence judicial conduct or judgment." So, again, it "would come as a surprise," if this Rule was so overbroad as to be unconstitutional.

b

With respect to Rule 4.1(A)(11), Dutton argues that the Rule is unconstitutional as applied to her because it prohibits her from telling her side of the story the way that she wants to without offending the Commission. Further, Dutton alleges that she intends to respond to media

8

inquiries regarding the 2020 reprimand in the same way that the Commission finds objectionable under the Code, meaning the threat of enforcement is ongoing. [R. 31 at 11.] Case law dictates that any impermissible burden on the First Amendment, however small, is unconstitutional. *See Connection Distributing Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998). There undoubtedly is a burden on Dutton's First Amendment right, which begs the question of whether Rule 4.1(A)(11) can pass strict scrutiny when applied to the facts. The statement at the center of this case was given in response to questions about Dutton's prior disciplinary history. In her response, Judge Dutton said:

> That issue involved the theft of a large sum of money by an attorney who also happens to practice law with my opponent. . . . I let my personal feelings about the theft interfere with my courtroom conduct and for that I apologize. No litigants were affected by my action, and the only person hurt was me.

[R. 31 at 6.]

The Commission is characterizing Dutton's statement as patently false, while Dutton is characterizing her statement as "ambiguously truthful." [R. 34 at 7.] Under Rule 4.1(A)(11), the former is prohibited, while the latter is allowed. With how the Commission is presently interpreting Dutton's remarks, she stands in violation of Rule 4.1(A)(11) and risks disciplinary action, despite Dutton believing her statement to be true. As a result, her ability to speak is burdened. At bottom, the Court can conceive of a world in which Dutton's statement is readily capable of a true interpretation, or, at the very least, that the statement was not made "knowingly, or with reckless disregard for truth."

In the Court's prior Order granting the Plaintiff's preliminary injunction with respect to Rule 4.1(A)(11), the Court noted that "it appears the practical effect of Rule 4.1(A)(11) has the potential to eclipse said interest, thereby failing to give Judge Dutton the requisite 'breathing space' to exercise her First Amendment right. *See generally Brown v. Hartlage*, 456 U.S. 45, 61

9

(U.S. 1982)." [R. 51 at 9.] The Court finds this conclusion holds true at the Summary Judgment phase.

There is an inherent tension between judicial elections and judicial independence. If a state chooses to have judges elected by voters, as is the case in Kentucky, the electorate should have the necessary information to make an informed choice. States should not be able to keep judges and judicial candidates from giving their opinions on issues that matter to voters. With this in mind, the Court finds that Dutton's statements are privy to First Amendment protections.

As an initial matter, Judge Dutton argues that Rule 4.1(A)(11) is unconstitutionally vague by failing to give "the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Court finds Rule 4.1(A)(11) gives the requisite guidance. "Don't want to violate the [Rule]? Don't tell a lie on purpose or recklessly." *Winter v. Wolnitzek*, 186 F.Supp.3d 673, 697 (E.D. Ky. 2016) (overruled on other grounds). Thus, Rule 4.1(A)(11) is not a problem because it is vague. Rather, the problem lies in how the Commission is applying Rule 4.1(A)(11) to Judge Dutton.

i

Taking Judge Dutton's statement phrase-by-phrase, the first phrase the Commission takes issue with is: "[t]hat issue involved the theft of a large sum of money by an attorney who also happens to practice law with my opponent." [R. 31 at 6.] At best, the Court thinks this phrase is likely Judge Dutton's opinion on her prior disciplinary record and therefore outside the scope of Rule 4.1(A)(11). *Winter v. Wolniztek*, 482 S.W.3d 768, 779 (Ky. 2016) (noting Canon 5(B)(1)(c) does not "cover expressions of opinion because expressions of an opinion do not implicate a statement that is not factually true").[4] At worst, the Court finds that Judge Dutton's

---

[4] Throughout the Court's analysis, it will draw comparisons between Rule 4.1(A)(11) and Canon 5(B)(1)(c), primarily because they use the same language. Likewise, the language of Canon 5(B)(1)(c) has been scrutinized by

statement is misleading, which is still considered constitutionally protected speech. *See Winter*, 834 F.3d 681, 694 (noting the misleading statement clause "adds little to the permissible ban on false statements, and what it adds cannot be squared with the First Amendment."). As this Court has previously stated, "[o]ne man's soundbite is another man's misleading statement." *Winter*, 186 F. Supp. at 697. In *Winter*, the Court concluded that Canon 5(B)(1)(c), which prohibited judges and judicial candidates from making any "misleading statement" "knowingly, or with reckless disregard for the truth," as unconstitutionally vague. *Id.* at 700. It is up to the public, not the government, to determine whether political speech is true or misleading. *Id.* Here, as in *Winter*, the Court finds that the best way to combat misleading speech is with more speech. *Id.*

The Commission argues that this matter was investigated by the Kentucky Bar Association, and no further action was taken against the individual accused of theft. [R. 39-5 at 1.] While the Court acknowledges this matter was investigated, the fact that no further action was taken can be attributed to a variety of reasons. Because the Commission does not provide details as to why no action was taken, it is entirely possible that no action was taken for an entirely different reason than the fact there was no theft.

Further, an "erroneous statement is inevitable in free debate," and "[t]he chilling effect of . . . absolute accountability for factual misstatements in the course of political debate is incompatible with [an] atmosphere of free discussion." *Brown v. Hartlage*, 456 U.S. 45, 60–61 (1982) (quotation omitted). It seems to the Court that this statement could be taken as either an

---

both the Sixth Circuit and the Kentucky Supreme Court. Thus, the Canon provides helpful guidance to the Court as it analyzes Rule 4.1(A)(11).

Canon 5(B)(1)(c) provided, in relevant part, that a judge or judicial candidate "shall not . . . knowingly, or with reckless disregard for the truth . . . make any . . . false or misleading statements." *Winter v. Wolnitzek*, 186 F.Supp.3d 673, 681 (E.D. Ky. 2016). Rule 4.1(A)(11) provides, in relevant part, "a judge or a judicial candidate shall not . . . knowingly, or with reckless disregard for the truth, make any false statement of material fact." Rule 4.1(A)(11), Kentucky Code of Judicial Conduct, SCR 4.300.

opinion or a misleading statement on her prior disciplinary action, either of which are privy to First Amendment protections.

### ii

The next statement the Commission takes issue with is: "[n]o litigants were affected by my actions, and the only person hurt was me." Again, the Commission argues that this statement is false because Judge Dutton's actions delayed the resolution of the case. [R. 39-3 at 1.] Further, the Commission asserted that Judge Dutton "sought to harm litigants when [she] failed to recuse" herself from the case. *Id.* Interestingly, much of the case law surrounding First Amendment protections given to opinions is in the defamation context. Although not completely on all fours with the facts of this case, the aim behind Rule 4.1(A)(11) and defamation laws are the same—to prevent harm caused by false statements. The Court again finds *Winter v. Wolniztek* instructive.

In *Winter*, the District Court certified a question to the Supreme Court of Kentucky to answer "[w]hat constitutes a false statement?" In their opinion, the Kentucky Supreme Court made clear that the "false statement" section of Canon 5(B)(1)(c) prohibited only statements of fact, rather than of opinion. *Winter*, 482 S.W.3d at 779. In their certification opinion, the Supreme Court of Kentucky concluded that Canon 5(B)(1)(c), does not "cover expressions of opinion because expressions of an opinion do not implicate a statement that is not factually true." *Id.* The Kentucky Supreme Court went on to conclude that Canon 5(B)(1)(c) does not "extend to expressions of subjective opinions or innocuous campaign-trail 'puffing.'" *Id.*

Albeit a different rule, because the same language is used, the Court finds the certification opinion instructive on the state's intent behind Rule 4.1(A)(11). Ultimately, the Court finds that Judge Dutton's statement is a matter of opinion and not subject to Rule

4.1(A)(11). From her perspective, the matter has been fully resolved, and she is the one still dealing with repercussions. The Commission has a different perspective. However, difference in perspectives does not make Judge Dutton's statement recklessly or knowingly false.

**B**

In addition to Summary Judgment, the Plaintiff also asks for a Permanent Injunction.[5] [R. 34 at 21.] The standard for granting a permanent injunction is essentially the same as that for a preliminary injunction, except that the plaintiff must show actual success on the merits rather than a mere likelihood of success. *Herrell v. Benson*, 261 F. Supp. 3d 772, 776 (E.D. Ky. 2017) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)). A plaintiff seeking a permanent injunction also must demonstrate that (1) it has suffered an irreparable injury; (2) there is no adequate remedy at law; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) it is in the public's interest to issue an injunction. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay Inc. v. MercExchange, LLC*, 126 S. Ct. 1837, 1839 (2006)).

Inasmuch as the Court has determined that summary judgment should be entered into in Judge Dutton's favor with respect to Rule 4.1(A)(11), the first requirement of success on the merits is satisfied. Additionally, Judge Dutton has established that she has suffered an irreparable injury. An injury is irreparable when it cannot be fully compensated by money damages. *Overstreet v. Lexington-Fayette Urban Cnty. Government*, 305 F.3d 566, 578 (6th Cir. 2002). And, where there is a constitutional violation established, a finding of irreparable injury is mandated. *See ACLU v. McCreary Cnty.*, 354 F.3d 438, 445 (6th Cir. 2003) ("[I]f it is found that

---

[5] In the usual course, a district court should conduct an evidentiary hearing before issuing a permanent injunction. *See Wedgewood Ltd. Partnership I v. Township Of Liberty, Ohio*, 610 F.3d 340, 349 (6th Cir. 2010). However, where no factual issues remain for trial, a district court's decision to grant a permanent injunction without a hearing will be upheld if summary judgment was properly granted. *Id.*

13

a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."). The balance of hardships, likewise, militates in favor of an injunction. While an injunction would presumably harm the Commission by preventing them from administering the constitutional application of the Rule, because the Court has found their application of Rule 4.1(A)(11) as-applied to Judge Dutton is unconstitutional, the Court finds the Commission is not harmed. Last, it is in the public's interest to prevent the unconstitutional application of Rule 4.1(A)(11). *See Martin–Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982) ("It is in the public interest not to perpetuate the unconstitutional application of a statute.").

Accordingly, the Court will grant the requested permanent injunction as it relates to Rule 4.1(A)(11). However, the injunction will be limited in scope to the parties before this Court *in this case*. *See Trump v. Hawaii*, 585 U.S. 667, 138 S. Ct. 2392, 2425, 201 L.Ed.2d 775 (2018) (Thomas, J., concurring) (opining that universal injunctions "prevent[ ] legal questions from percolating through the federal courts, encourag[e] forum shopping, and mak[e] every case a national emergency for the courts and for the Executive Branch."). Here is why—the Commission's current application of Rule 4.1(A)(11) as-applied to this set of facts is unconstitutionally chilling Judge Dutton's speech; however, on a set of different facts with the same parties, it could be case that the Commission is applying Rule 4.1(A)(11) in an entirely constitutional way as to Judge Dutton. The Court does not have a crystal ball to predict other situations in which this rule may be applied against Judge Dutton. Permanently enjoining the Commission from using Rule 4.1(A)(11) against Judge Dutton effectively makes her immune to speak falsely with no repercussions. While the Court agrees that the current application of the Rule to Judge Dutton on these facts is unconstitutional, Rule 4.1(A)(11) still plays a narrowly-tailored role in maintaining the honesty and integrity of the judiciary.

## III

In light of the above analysis, the Court finds that Rule 4.1(A)(11), as it applies to Judge Dutton, runs afoul of the First Amendment. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Plaintiff's Motion for Summary Judgment **[R. 34]** is **GRANTED IN PART AND DENIED IN PART**;

2. The Defendant's Motion for Summary Judgment **[R. 39]** is **GRANTED IN PART AND DENIED IN PART**;

3. The Plaintiff's Motion for Permanent Injunction **[R. 34]** is **GRANTED IN PART AND DENIED IN PART**;

4. The Plaintiff's request for permanent injunction for her as-applied challenge of Rule 4.1(A)(11) is **GRANTED**; and

5. The Judicial Conduct Commission is **ENJOINED** from enforcing Rule 4.1(A)(11) as it applies to Plaintiff Dutton's statement in *The Sentinel-News* article published on October 24, 2022.

This the 27th day March 2025.



Gregory F. Van Tatenhove
United States District Judge